The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MARK O. SWARTZENTRUBER AND | ) | CASE NO. 08-63666 |
| LISA M. SWARTZENTRUBER, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

    The United States Trustee's (hereafter "UST") motion to dismiss Debtor Mark O. Swartzentruber's case is now before the Court.[1] The motion was filed on February 2, 2009 and cites grounds for dismissal under both 11 U.S.C. § 707(a) and 707(b). An evidentiary hearing was conducted on June 15, 2009. Following the hearing, each party submitted a post-hearing brief. In the interest of economy, the Court agreed to first consider the issue of whether Debtors' debts were primarily consumer or business debts. Decision on this issue will establish whether 11 U.S.C. § 707(b) is applicable to the debtors.

    Jurisdiction is premised in 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following Memorandum of Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. In

---

[1] Debtor Lisa M. Swartzentruber was dismissed by agreement of the parties on September 2, 2009.

rendering its decision, the Court has considered the testimony of witnesses and the exhibits admitted into evidence during the hearing.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtors filed a joint chapter 7 petition on October 31, 2008 and identified their debts as primarily business debts. According to Schedules D and F, Debtors have the following debts: secured debts totaling $660,603 and unsecured debts in an unknown amount for condominium association fees for a condominium in Florida. This case was filed with the goal of relieving Debtors of the Florida condominium. At a minimum, $445,500 of the secured debt, and all the unsecured debt, are associated with the Florida property.[2]

Debtors purchased the condo in late 2005. The loan documents connected to the purchase of the condominium clearly state that the purpose of the loan was to purchase a property to be used as a second residence. The mortgage contained an occupancy clause that also provided for use of the property for residential, not commercial, purposes. Debtors, however, unequivocally deny that this was their intent. Debtors credibly testified that they did not have the financial means to reserve the property solely for personal use, but fully intended to use the property for investment purposes, including offering the unit for lease. While Debtors admit that they did sign the documents declaring the purpose was to use the property as a secondary residence, they allege that overnight mail issues and related problems necessitated hurrying to close the deal and they did not have the time to read the documents. They blindly trusted those involved with the transaction.

## LAW AND ANALYSIS

11 U.S.C. § 707(b)(1) provides that a court may dismiss a case "filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." The bankruptcy code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The fundamental question in this dispute is whether the classification of a debt as consumer or non-consumer debt should be based on the loan documents, or upon the Debtors' intent when the debt was incurred. If the Court disregards Debtors' intent, adopting UST's arguments, the documents indicate that the debts were incurred for the purchase of a second residence, thereby qualifying a as a "personal, family, or household purpose," and

---

[2] Debtors also testified that some of the monies from their residential mortgages were used toward the Florida property. There is no dispute that more than fifty percent of the aggregate debt in this case is relates to the Florida condominium.

should be considered to be consumer debts. If the Debtors' intent behind the transaction controls, and these debts were incurred for an income or investment purpose, it follows that they are not consumer debts, thereby making section 707(b) (and the means test) inapplicable to these debtors.

In support of its position, UST cites a case from the Sixth Circuit Court of Appeals which determined that tax debts were not consumer debts under 11 U.S.C. § 1301(a). Internal Revenue Serv. v. Westberry (In re Westberry), 215 F.3d 589 (6th Cir. 2000). In that case, the court based its decision on findings that the debt was not incurred voluntarily; it was incurred for a public, rather than a personal purpose; the taxes were assessed on earning money, not spending it; and there was no extension of credit involved in the transaction. Id. The court pointed out that the bankruptcy code treats tax debts quite differently from consumer debts. It also noted that the language of the statute was plain, thereby eliminating the need to go beyond the language of the statute to divine meaning, or intent, from the use of the phrase "consumer debt." To this end, the Court finds the Westberry opinion to be of little aid. Most consumer and non-consumer debt share similar characteristics and therefore cannot necessarily be as easily distinguished as the tax debt in Westberry. For example, both consumer and non-consumer debt can be incurred voluntarily, can be based on the consumption of goods and/or services, and involve the issuance of credit. Clearly, the disparity between tax debts and consumer debts is far more pronounced that the differences between all consumer and non-consumer debt and quickly dispels the utility of the Westberry analysis.

Westberry did offer some useful insight on an alternative–the profit motive test. Although the Sixth Circuit did not find the profit motive test to be conclusive on the facts in Westberry, it did not annul employment of the profit motive test:

> This test was derived from a similar test used under the consumer protection statutes upon which the Bankruptcy Code's definition of consumer debt was derived. *See id.* at 1054-55. The profit motive analysis is used, and is clearly appropriate, to determine whether a debt falls outside the category of consumer debt. There is nothing inherent in this test, or direction from the Bankruptcy Code to suggest, that the test defines the *only* category of non-consumer debt. Therefore, while the profit motive analysis may assist in the determination of which debts are not consumer debt, it does not prohibit other debts from falling outside the category of consumer debt. *See* Marshalek, 158 B.R. at 706 ("The profit motive test is normally applied to cases involving expenditures.... An inability to classify a particular debt as a business debt does not automatically relegate it to the status of consumer debt."). *But see* Kestell v. Kestell (In re Kestell), 99 F.3d 146, 149 (4th Cir. 1996) (using the test to determine that

> because a debt was not business debt, it was consumer debt).

Westberry, 215 F.3d at 593 (citing In re Booth, 858 F.2d 1051 (5th Cir. 1988); In re Marshalek, 158 B.R. 704 (Bankr. N.D. Ohio 1993)).

The profit motive test simply involves ascertaining whether the debt was "incurred with an eye toward profit." *See* In re Davis, 378 B.R. 539, 547 (Bankr. N.D. Ohio 2007) (citing In re Booth, 858 F.2d 1051, 1055 (5th Cir. 1988); In re Almendinger, 56 B.R. 97 (Bankr. N.D. Ohio 1985)). In Davis, the debtor purchased a property for her boyfriend to "flip." Debtor defaulted on the mortgage and the bankruptcy filing resulted from liability on the default judgment. Debtor initially filed as a consumer debtor, but later amended the voluntary petition to a business filing. The UST successfully objected to the classification of the debt as a business debt. The Davis court focused on the fact that the debtor did not have an agreement regarding the proceeds from the sale of the property and that she was not engaged in the business of "flipping" houses. The absence of the profit motive was fatal to debtor's position that the debt was a business debt. The Court viewed the transaction as a favor to debtor's boyfriend.

In the present case, however, the facts show that Debtors did incur the debt with an eye toward profit. The Court is convinced by Debtors' testimony that the debt on the Florida condominium was incurred with a profit motive and not for a consumer, personal or household purpose. First, it is readily apparent that Debtors did not have the means to finance and maintain the Florida condominium without rental income. Mr. Swartzentruber testified that he earns $6,000 per month. According to Schedule J, the Debtors' monthly expenses are $7,340.81.[3] No expenses for the Florida condominium are included on Schedule J. Consequently, it is impossible to conclude that Debtors would have been able to afford the condominium as a second residence. Debtor stated that he was told he would make $4,000 per month and that the rental income from the property was imperative to pay the mortgage and the related expenses of the condominium.

Mr. Swartzentruber testified that his family had been vacationing in the area for fifteen years and they were aware of how rapidly the price of real estate increased from 1999 to 2005 in the area. He was aware that a unit that sold for $333,000 in 2003 had increased in value to $500,000 in 2005. He said that he had approximately $15,000 in an investment account that wasn't doing very well and thought he might use that money to invest in real estate. He always looked at the transaction as an investment. Debtor's testimony also revealed that he actually signed the rental agreement with the management company before he signed the mortgage. Debtor also testified that when he closed on the loan, he had borrowed $495,000 on the property and Wells Fargo appraised the property

---

[3] Debtor testified that his current expenses are approximately $6,400 because medical expenses have increased, but he is not currently paying the private school tuition for his children.

at $560,000. Additionally, for at least two years the expenses were treated as business losses on Debtors' tax returns.

There was also testimony to discount that Debtors intended to use the property for personal use. The condominium was 400 square feet and Debtors' family includes three children. Debtors testified the condo was too small for his family.[4] Additionally, Debtor testified an ordinance in the city of Bradenton prohibits an owner from staying in a rental for more than thirty consecutive days, eliminating any possibility of use by his family on a long-term basis. He also testified he intended to sell the property in two to three years following its purchase because he knew it would get "dumpy" renting it on a day-to-day basis. Simply, the Court finds both Debtors' testimony on these facts to be credible and accepts their position that the Florida condominium was not purchased as a second residence, but was purchased as an investment property with an eye toward profit. This result is clearly consistent with other decisions. For example, a court noted that "income producing property would not appear to fit this mold [of consumer debts]." In re Burge, 377 B.R. 573 (Bankr. N.D. Ohio 2007). Similarly, "[d]ebts related to rental activity incurred by part-time landlords are not consumer debts under section 101(8)." In re Webster, 2007 WL 1140677 (Bankr. N.D. Cal. 2007) (citation omitted); *see also* In re Gentri, 185 B.R. 368 (Bankr. M.D. Fla. 1995). Finally, the Court also acknowledges Debtor's testimony that he merely signed loan documents that were selected by the bank representative, a person Debtor knew to frequently handle loans on the condominium project and who was aware the intended uses of the units.

## CONCLUSION

While there is no doubt that the documents indicate that the Florida condominium was for the purchase of a second residence, the Court concludes that Debtors' intent in incurring the debt, or entering into the transaction, is the key to determining the nature of the debt as a consumer or non-consumer debt. As a result, the Court finds that Debtors have correctly classified their debts as business/non-consumer debts.

An appropriate order will be entered reflecting the decision of the Court.

\# \# \#

---

[4] It was only one room of a converted hotel. Debtor did testify the condominium was used by his family two or three times.

## SERVICE LIST

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Dean P. Wyman
Scott R. Belhorn
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Avenue, Suite 441
Cleveland, OH 44114-1240